**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUANITA BALDERAS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| ILLINOIS CENTRAL RAILROAD | ) | JURY TRIAL DEMANDED |
| COMPANY, ERICK CHASKO, | ) | |
| and MARCOS SALAMANCA, | ) | |
| | ) | |
| *Defendants.* | ) | |

## **COMPLAINT**

The plaintiff, Juanita Balderas, by her attorneys, files the following Complaint against defendants Illinois Central Railroad Company, Erick Chasko, and Marcos Salamanca pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e, *et seq*., the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., the Illinois Human Rights Act, 775 ILCS 5/101, *et seq*., and the Illinois Gender Violence Act, 740 ILCS 82, *et seq*.

## **THE PARTIES**

1.      Defendant Illinois Central Railroad Company ("IC"), is an Illinois corporation with its headquarters in Chicago, Illinois. It is an indirect subsidiary of Canadian National Railway Company ("CN"). IC is a rail carrier that operates in numerous states, including Illinois.

2.      Defendant Erick Chasko is a managerial employee of IC.

3.      Defendant Marcos Salamanca is a nonmanagerial employee of IC.

4.      The plaintiff, Juanita Balderas, is employed by IC. She is a resident of Chicago Heights, Illinois.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

8.      The Northern District of Illinois has personal jurisdiction over the defendants because they reside in and/or do business in this District.

9.      Ms. Balderas has satisfied the administrative requirements for filing her Title VII claims. She timely filed an EEOC charge (No. 440-2019-01899) on December 28, 2018, then timely filed an amended charge on August 7, 2019. She received a Notice of Right to Sue from the EEOC dated December 20, 2019 (Exhibit A).

10.     This Complaint is timely filed within 90 days of the plaintiff's receipt of the Notice of Right to Sue.

11.     On January 16, 2020, Ms. Balderas served a written request on the Illinois Department of Human Rights within 30 days of the EEOC's Notice asking the Department to adopt the EEOC's findings on the cross-filed charge and issue a Notice of Dismissal. She is currently awaiting that Notice.

## FACTUAL BASIS OF CLAIMS

12.     Ms. Balderas is a Hispanic female who is 41 years old. She has been employed by IC since December 2017.

13.     Ms. Balderas was the only female in her training class of approximately 24 individuals.

2

14.     Ms. Balderas performed her duties satisfactorily throughout her employment.

15.     Ms. Balderas began working for IC as a Laborer in the Woodcrest, Illinois yard on December 17, 2017. She was trained as a Hostler and became licensed as a Locomotive Engineer one month later. In approximately February 2018, she was moved to IC's Kirk yard in Gary, Indiana.

16.     In May 2018, Ms. Balderas was promoted to the position of Leadman. She was the only female Leadman in her yard.

17.     As a five-day Leadman, she earned more per hour than in her prior position, had Fridays and Saturdays off, and earned 10 hours of overtime per week.

18.     Ms. Balderas' direct supervisor was Erick Chasko. Shortly after she began the Leadman position, Mr. Chasko began treating her differently than her male counterparts. For example, he refused to train or work directly with her, as he did with another male trainee.  He would not answer her calls or emails when she needed help, instead focusing only on training the male employee.  When she called him, Mr. Chasko would respond directly to her subordinates, cutting her out of the process.

19.     Ms. Balderas was also harassed and belittled by both Mr. Chasko and others. For example, another male employee cursed at her, called her names like "dummy" or "stupid," and told her she did not know how to do the job.

20.     Others in the yard stated that this job was not for a woman and called Ms. Balderas derogatory names.

21.     On a daily basis, Ms. Balderas worked in locomotives covered in drawings of male and female genitalia, breasts, curse words, and sexual comments.

22.     She was informed that her name and phone number were written on the men's locker room wall.

23.     Several male coworkers kept sexist and lewd graffiti, pictures, and calendars in the offices. They also urinated with the door to the bathroom open on several occasion.

24.     Ms. Balderas' supervisor and male coworkers actively sabotaged her work by actions such as causing trains under her supervision to be delayed, not answering the radio when she called, not following her directives, and working extra slowly when she was in charge.

25.     Ms. Balderas was harassed by several others on a near-daily basis. In one example, she was locked out of her locomotive by all three of the male workers in the yard, after which a male co-worker came toward her cursing and shouting. She reported this incident to her supervisor and other management.

26.     Ms. Balderas' male coworkers could be heard by anyone in the vicinity, including management, making negative comments to and about Ms. Balderas on the radio.

27.     On another occasion, Ms. Balderas received a pornographic picture on her cell phone from an anonymous phone number in Hobart, Indiana. On information and belief, the picture was sent from someone who worked for IC.

28.     Ms. Balderas sent the picture to Angela Lee, IC's Human Resources Associate. She also complained to managers Janet Washington, Manny Salazar, and Aaron France about this and other harassment. None of her complaints resulted in any improvement.

29.     After several weeks of harassment, Ms. Balderas could not tolerate the situation any longer. She bid out to another position of 2-day Leadman on the 2nd shift. In this position, she lost 10 hours of overtime per week and took on a much-less-desirable schedule in order to avoid the harassment. Her supervisor on that shift was Todd Hunt.

30.    However, the situation did not improve. On October 12, 2018, Ms. Balderas was accosted by an electrician named Marcos Salamanca after she assigned him a task. He came into the office and began yelling that she did not know what she was doing, calling her a "lazy motherfucker," a "piece of shit," a "stupid bitch," and a "woman who didn't know her job." He said "you ain't shit" and asked, "why do they have a woman working here?"

31.    Several people witnessed this assault.

32.    Ms. Balderas immediately called her supervisor, Todd Hunt, who came and took a report.

33.    The next day, on October 13, 2018, the harassment began again. As Ms. Balderas came into work, she heard other workers, including Salamanca, on the radio cursing her, calling her a "lazy fuck," and stating, "she doesn't know what she is doing." Salamanca said he was "tired of that lazy motherfucker with a magnet on her ass - she never gets out of that chair."

34.    These and other radio transmissions are recorded by IC and, on information and belief, such recordings are kept in the regular course of business.

35.    Salamanca then came into the office and began to argue with Ms. Balderas. He said, "fuck you, you dumb bitch" – "you piece of shit – you ain't a woman." He approached her aggressively several times, pointed his finger at her, and yelled at her.

36.    Alarmed at the situation, Ms. Balderas went to sit at the table. At one point, she turned around and looked back to see Salamanca was charging toward her. Ms. Balderas was in fear that he would physically attack her.  At least three other workers saw this and got up from the table to stop him from attacking her. They removed him from the office and Ms. Balderas called Todd Hunt, her supervisor, to report the assault.

37.     Ms. Balderas also reported the assault to Janet Washington by leaving her a voicemail in which she stated she could not take the harassment anymore.

38.     Ms. Balderas was asked to write a statement and get back to work. A few hours later, she was told to go home and not return to work until she heard from manager Manny Salazar.

39.      The following day, October 14, 2018, Ms. Balderas got a call from her union representative stating she was out of service until further notice. She was off work for three weeks, losing many hours of overtime.

40.     On October 17, 2018, Ms. Balderas was asked to come to the Homewood, Illinois office to meet with Manny Salazar. She told him everything that had happened. She was advised that all Leadman jobs had been abolished on October 14, 2018 and that all of the other male Leadmen were now working as Relief Foreman. Mr. Salazar offered her a position as a Relief Foreman and she accepted.

41.     The day Ms. Balderas was scheduled to begin as a Relief Foreman, her union representative called and said she was still out of service because she was still "under investigation." She continued to wait and lose overtime hours.

42.     On October 29, 2018, Ms. Balderas was told by her union representative to attend a meeting with Manny Salazar and Duane Spears, IC's Human Resources Manager. At the meeting, she was told there was no evidence that what she reported was true, and that no employees or supervisors were willing to talk about the incidents that occurred, but that the investigation would continue.

43.     Ms. Balderas was also told that the Relief Foreman position was no longer offered to her, because there were now "no positions available." She was directed to bid for a Hostler

6

position. On November 2, 2018, she was instructed to return to work at the Woodcrest yard in Homewood, Illinois as a Hostler on the 11 pm to 7 am shift.

44.     This was a demotion for Ms. Balderas in status, compensation, and the hours she was assigned to work. She earned a lower hourly rate and lost 10 overtime hours per week. She also lost the choice of days off that she used to visit her grandchildren as part of a court-ordered custody arrangement.

45.     Of the other four male Leadmen who became Relief Foreman, they are all still working as Relief Foreman. Additionally, another male employee received a position as Relief Foreman after Ms. Balderas was told the position was abolished.

46.     Marcos Salamanca, the individual who assaulted Ms. Balderas, is now back in the Kirk yard, the same yard where both he and Ms. Balderas worked together. On information and belief, he has not been disciplined.

47.     Ms. Balderas was not allowed to return to the Kirk yard and was sent to a different yard. Two weeks after she began there, Erick Chasko was brought in as the supervisor. Ms. Balderas was now reporting again to Mr. Chasko, the same supervisor at the Homewood yard who harassed her and treated her differently than her male colleagues at the beginning of her tenure at IC.

48.     Ms. Balderas applied to several different positions that she was qualified for in an attempt to get away from her harassers. She was denied each position.

49.     On December 13, 2018, Ms. Balderas received a letter from Angela Lee stating that IC had completed its investigation into her complaint against Marcos Salamanca and her complaints about her treatment as a Leadman. The letter concluded, without providing any

information about the underlying investigation, that "we were unable to conclude that any violation of our Prohibited Harassment, Discrimination and Anti-Retaliation Policy occurred."

50.     Ms. Balderas filed an EEOC charge alleging discrimination based on sex and race and retaliation on December 28, 2018. After she filed her initial EEOC charge, she continued to be discriminated against and experienced additional retaliation.

51.     In December 2018, Ms. Balderas seriously injured her back while on the job and was unable to return to work. She was placed on unpaid medical leave by IC.

52.     On January 21, 2019, her doctor released her for light duty.

53.     Ms. Balderas sent the release to Heather Lifonti, the Risk Officer for IC, and asked IC to return her to work at a light duty position. IC refused to make any accommodations for Ms. Balderas and refused to return her to work or to retrain her for a position compliant with her restrictions.

54.     IC has returned other individuals (who were not in protected groups and/or who had not engaged in protected activity) to work light duty positions, including informally arranging for them to work at light duty tasks, after an injury.

55.     At the present time, Ms. Balderas is still out of work without pay and has been for some fifteen months. She was forced to borrow from her retirement benefits for a period of six months, but that source of funds has now been terminated.

56.     Ms. Balderas was cleared a second time for light desk duty on December 31, 2019. She informed IC, which again refused to accommodate her.

**FIRST CLAIM FOR RELIEF**
**Sex harassment, discrimination, and imposition**
**of a hostile work environment in violation of**
**Title VII of the Civil Rights Act of 1964,**
*as amended*, **42 U.S.C. §§ 2000e,** *et seq.*
**Against Defendant IC**

57.     Ms. Balderas realleges each of the paragraphs set forth above.

58.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*

("Title VII"), prohibits employers from denying employees equal employment opportunities with

respect to terms, conditions, benefits or privileges of employment based on their sex or gender,

whether intentionally or unintentionally.

59.     Title VII also prohibits harassment of a person because of that person's sex that is

severe or frequent enough to create a hostile work environment.

60.     The defendant IC is an "employer" within the meaning of Title VII, and Ms.

Balderas is an "employee" within the meaning of Title VII.

61.     As alleged above, IC denied Ms. Balderas the equal terms, conditions, benefits or

privileges of employment because of her sex or gender.

62.     As alleged above, IC caused and allowed Ms. Balderas to be sexually harassed

and allowed a hostile work environment to be created and perpetuated.

63.     Ms. Balderas' sex or gender were motivating factors in the defendant's conduct

towards her.

64.     The defendant's actions were willful, intentional and/or done maliciously or with

callous disregard or reckless indifference to Ms. Balderas' federally protected rights. Exemplary

damages are warranted to prevent similar unlawful conduct.

65.     Ms. Balderas was damaged by the defendant's conduct.

## SECOND CLAIM FOR RELIEF
**Discrimination in violation of the**
**Americans with Disabilities Act, 42 U.S.C. §§ 12101,** *et seq.*
**Against Defendant IC**

66.     The plaintiff realleges each of the paragraphs set forth above.

67.     Section 12112(a) of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

68.     The ADA provides that a person who is not actually disabled may be classified as disabled under the statute if the person is "regarded as" disabled by her employer. 42 U.S.C.S. § 12102(2)(c).

69.     Ms. Balderas was a qualified person with a disability or else was regarded as disabled by IC.

70.     The defendant IC violated § 12112(a) of the ADA by discriminating against Ms. Balderas, refusing to return her to work on account of her disability or perceived disability, and refusing to accommodate her.

71.     Ms. Balderas was damaged by IC's conduct.

## THIRD CLAIM FOR RELIEF
**Retaliation in violation of the**
**Title VII of the Civil Rights Act of 1964,**
*as amended***, 42 U.S.C. §§ 2000e,** *et seq.*
**Against Defendant IC**

72.     Ms. Balderas realleges each of the paragraphs set forth above.

73.     Title VII prohibits employers from retaliating against anyone who engages in protected activity, including by opposing conduct reasonably believed to be unlawful under Title

VII or by participating in an employer's internal investigation into allegations of conduct reasonably believed to be unlawful under Title VII.

74.     As described above, Ms. Balderas engaged in protected activity by opposing and reporting conduct by defendant IC that she reasonably believed was unlawful under Title VII.

75.     As described above, the defendant retaliated against Ms. Balderas for engaging in protected activity.

76.     The defendant's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Balderas' federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct by the defendant.

77.     Ms. Balderas was damaged by the defendant's conduct.

## FOURTH CLAIM FOR RELIEF
### Sex harassment, discrimination, and imposition of a hostile work environment in violation of the Illinois Human Rights Act, 775 ILCS 5/101, *et seq.* Against Defendants IC, Chasko, and Salamanca

78.     Ms. Balderas realleges each of the paragraphs set forth above.

79.     Under the Illinois Human Rights Act, "unlawful discrimination means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service …." 775 ILCS 5/1-103(Q).

80.     Under the IHRA, "sexual harassment" means "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when … such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." 775 ILCS 5/2-101(E). The definition

of "harassment" also includes "any unwelcome conduct on the basis of an individual's … sex." *Id.* at E-1.

81.     The IHRA makes it unlawful "for any employer to refuse to hire, to segregate, to engage in harassment … or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A).

82.     As alleged above, the defendants violated the IHRA by discriminating against the plaintiff, engaging in and/or permitting harassment, and creating and/or permitting the creation of a hostile, offensive, or intimidating work environment based on sex.

83.     Defendants IC and supervisor Chasko became aware of the conduct but failed to take reasonable corrective measures.

84.     Defendants' actions against Ms. Balderas have deprived her of her human rights and caused great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

### FIFTH CLAIM FOR RELIEF
**Violation of the Illinois Gender Violence Act, 740 ILCS 82, *et seq*.**
**Against IC and Salamanca**

85.     Ms. Balderas realleges each of the paragraphs set forth above.

86.     The Illinois Gender Violence Act, 740 ILCS 82, *et seq*., provides that "gender related violence" is a "form of sex discrimination." 740 ILCS 82/5.

87.     "Gender related violence" is defined as "violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on

the basis of the person's sex …" or a "threat of an act described in (1) … causing a realistic apprehension that the originator of the threat will commit the act." 740 ILCS 82/5.

88.     "Battery" occurs, as defined by 720 ILCS 5/12-3, when a person "causes bodily harm to an individual or … makes physical contact of an insulting or provoking nature with an individual."

89.     "Assault" occurs, as defined by 720 ILCS 5/12-1, when a person "engages in conduct which places another in reasonable apprehension of receiving a battery."

90.     As described above, Ms. Balderas had a realistic apprehension that defendant Salamanca would commit battery.

91.     As described above, defendant IC was informed of this conduct but took no steps to remedy or stop it.

92.     The Act provides that any person who has been subjected to gender-related violence as defined in Section 5 of the Act may bring a civil action for damages, injunctive relief, and other appropriate relief against the person or persons perpetrating that violence. 740 ILCS 82/10.

93.     The defendants' actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Balderas' rights. Exemplary damages are warranted to prevent similar unlawful conduct.

94.     Ms. Balderas was damaged by the defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Juanita Balderas, prays for relief from the defendants as to all counts of her Complaint as follows:

A.     An order declaring that the defendants violated the laws set forth above;

B.      An order enjoining future such violations;

C.      Reinstatement to the position that Ms. Balderas would have had but for the illegal conduct;

D.      Payment of Ms. Balderas' lost past and future wages and benefits (including any and all types of compensation and benefits);

E.      Compensatory damages, emotional and mental distress damages, punitive damages, statutory damages, liquidated damages, and civil penalties;

F.      Payment of Ms. Balderas' attorneys' fees and all costs of litigation (including statutory fees and expert witness fees);

G.      Pre-and post-judgment interest; and

H.      All other and relief, whether legal or equitable, that the Court may deem appropriate.

## **JURY DEMAND**

The plaintiff demands a trial by jury on all issues raised in the foregoing Complaint.

Respectfully submitted,

/s/ Jamie S. Franklin
Jamie S. Franklin

Jamie S. Franklin, ARDC No. 6242916
THE FRANKLIN LAW FIRM LLC
53 West Jackson Blvd., Ste. 803
Chicago, IL 60604
(312) 662-1008
(312) 662-1015 (fax)
jsf@thefranklinlawfirm.com

Susan Pavlow
LAW OFFICES OF SUSAN M. PAVLOW
53 West Jackson Blvd., Ste. 1215
Chicago, IL 60604
(312) 322-0094
smpavlow@mac.com

Electronically filed on March 18, 2020

# EXHIBIT A

12/28/2018  03:56    170875   03              SOCHICAGO HEIGH                    PAGE  01/05

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2019-01899 |

Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Ms. Juanita Balderas | 708-518-5067 | April 1, 1978 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 81 E. Glengate Avenue | Chicago Heights, IL 60411 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Canadian National Railway Company and/or its subsidiaries | 500+ Employees | 708-322-3516 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 17641 Ashland Avenue | Homewood, IL 60430 (Local office) | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: Dec. 2017   Latest: Present<br><br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(if additional paper is needed, attached extra sheet(s))*:

    I am a female employee of Canadian National Railway Company ("CN"). I began working for CN in December 2017. I am currently a Hostler at CN's Homewood, IL location.

    During my employment, I have been discriminated against on account of my gender (female) and race (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended. I have also been retaliated against for engaging in protected activity. The specifics of my situation are as follows.

*Please see additional pages below.*

RECEIVED EEOC

JAN 0 7 2019

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 12/28/18    *Juanita Balderas* <br> Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* DECEMBER 28, 2018 |

OFFICIAL SEAL
WANDA MOREHEAD
Notary Public · State of Illinois
My Commission Expires 6/15/2019

12/28/2018 03:56    170875    03                    SOCHICAGO HEIGH.                    PAGE  02/05

*EEOC Charge of Juanita Balderas*
*Page 2*

I began working for CN as a Laborer in CN's Woodcrest, Illinois yard on December 17, 2017. I was trained as a Hostler and became licensed as a Locomotive Engineer one month later, and I was moved to CN's Kirk yard in Gary, Indiana in February 2018.

I was the only female and one of only two Hispanics in my training class of approximately 24 individuals.

In May 2018, I was promoted to the position of Leadman. I was the only female Leadman in my yard. As a five-day Leadman, I earned $0.50 cents more per hour than previously, had Fridays and Saturdays off, and earned 10 hours of overtime per week.

My direct supervisor was Erick Chasko. Shortly after I began that position, Mr. Chasko started treating me differently than my male counterparts. For example, he would not train me or work directly with me, as he did with the male trainee, Chris Davis. He would not answer my calls or emails when I needed help, instead focusing only on training Mr. Davis. I was also harassed and belittled by both Mr. Chasko and Mr. Davis. For example, Mr. Davis cursed at me, called me names like "dummy" or "stupid," and told me I didn't know how to do my job. Others stated that this job was not for a woman, made rude comments about me, called me names, and called other supervisors on other shifts and told them not to train or work with me.

On a daily basis, I worked in locomotives covered in drawings of male and female genitalia, breasts, curse words, and racist comments. I was told my name and phone number were written on the men's locker room wall. Several male coworkers kept sexist and lewd graffiti, pictures, and calendars in the offices. I have seen my male coworkers urinating with the door to the bathroom open on several occasions.

My supervisor and male coworkers also actively sabotaged my work by, for example, causing my trains to be delayed, not answering the radio when I called, hiding from me, not doing work I needed to have done, working extra slowly when I was in charge, and similar behavior.

I was harassed by Chris Davis and others, including Chuck Hanks and Rick Vallejo, on a near-daily basis. In one example, I was locked out of my locomotive by all three of the male workers in the yard, after which Chuck Hanks came toward me cursing and shouting. I reported this incident to my supervisor and other management. My male coworkers could be heard by anyone in the vicinity, including management, talking about me on the radio. One supervisor, Todd Hunt, reprimanded then and told them to stop, but the harassment continued.

On another occasion, I received a pornographic picture on my cell phone from an anonymous phone number in Hobart, IN. I believe it was from someone who worked for CN, as the picture was addressed to "hey Juanita." I only use my full name, Juanita, at work at CN. I sent the picture to Angela Lee, CN's Human Resources Associate. I also complained to managers Janet Washington, Manny Salazar, and Aaron France about this and other harassment. None of my complaints resulted in any improvement.

12/28/2018 03:56 170875 03 SOCHICAGO HEIGH PAGE 03/05

*EEOC Charge of Juanita Balderas*
*Page 3*

After several weeks of harassment, I could not tolerate the situation any longer. I bid out to another position of 2 day Leadman on the 2nd shift. I lost 10 hours of overtime per week and took on a much-less-desirable schedule in order to avoid the harassment. My supervisor on that shift was Todd Hunt.

Unfortunately, things did not get better. On October 12, 2018, I was accosted by an electrician named Marcos Salamanca. He came into my office and began yelling that I didn't know what I was doing, calling me a "lazy motherfucker," a "piece of shit," a "stupid bitch," and a "woman who didn't know her job." He said "you ain't shit" and asked, "why do they have a woman working here?" Many people witnessed this assault. I immediately called my supervisor, Todd Hunt, who came and took a report. Hunt told me at that time that he had heard my coworkers harassing me over the radio.

The next day, on October 13, 2018, Marcos Salamanca, Eli Soto, and others began the harassment again. As I came into work, I heard them on the radio cursing at me, calling me a "lazy fuck," and stating, "she doesn't know what she is doing." Salamanca said he was "tired of that lazy motherfucker with a magnet on her ass - she never gets out of that chair to help me arm markets" (which was his job, but I was learning it to try to be helpful to the electricians). Everyone else could hear this over the radio as well, and the radio transmissions are recorded.

Salamanca then came into my office and began to argue with me. He said, "fuck you, you dumb bitch" – "you piece of shit – you ain't a woman." He charged toward me aggressively and I was afraid he would physically attack me. I returned to my desk, alarmed, and, looking back, I saw he was charging around the desk toward me. Three other workers, Ray Scott, Rick Styer, and Grady Hale, saw this and got up from the table to stop Marcos from attacking me. They removed him from the office and I called Todd Hunt, my supervisor, to report the assault. I also reported the assault to Janet Washington by leaving her a voicemail in which I cried and said I could not take the harassment anymore. I was asked to write a statement and get back to work. A few hours later, I was told to go home and not return to work until I heard from manager Manny Salazar.

The following day, October 14, 2018, I got a call from my union rep telling me I was out of service until further notice. I was out for three weeks. I got paid, but I lost many hours of overtime.

On October 17, 2018, I was asked to come to the Homewood, IL office to meet with Manny Salazar. I told him everything that had happened, and he offered me a position as a Relief Foreman at Woodcrest, which is the Homewood yard. I was happy to hear this and planned to accept the position. I was also told during the meeting that all Leadman jobs had been abolished on October 14, 2018 and that all of the other male Leadmen were now working as Relief Foreman.

The day I was scheduled to begin as a Relief Foreman, my union rep called and said I was still out of service because I was still "under investigation." So I continued to wait and lose overtime hours.

*EEOC Charge of Juanita Balderas*
*Page 4*

On October 29, 2018, I was told by my union rep to attend a meeting with Manny Salazar and Duane Spears, CN's Human Resources Manager. At the meeting, I was told there was no evidence that what I reported was true, and that no employees or supervisors were willing to talk about the incidents that occurred, but that the investigation would continue.

I was also told that the Relief Foreman position was no longer offered to me, because there were now "no positions available." I was instructed to return to work at the Woodcrest yard in Homewood, IL on November 2 as a Hostler on the 11 pm to 7 am shift. This was a demotion for me in status, compensation, and the hours I was assigned to work. I believe I was demoted in retaliation for reporting the incidents discussed above. I lost wages because I earned a lower hourly rate and I lost 10 overtime hours per week. I also lost the choice of days off that I used to visit my grandchildren as part of a court-ordered custody arrangement. Of the other four male Leadmen who became Relief Foreman, they are all still working as Relief Foreman. My position was the only one that was abolished.

The day I returned to work as a Hostler, I received a phone call from Duane Spears, Human Resources Manager. I told him that I had been contacted by Milton Petterson, a supervisor who had reached out to me and offered to help with the investigation by telling CN what he knew about the harassment I experienced. My union representative, Mike Kirka, also told me that another male Hostler named Jake was scheduled to begin as a Relief Foreman in two days, despite the fact that I had been told there were no open positions. Nothing came of my reporting.

Marcos Salamanca, the individual who assaulted me, is now back in the same yard he used to work in, and, on information and belief, he has not been disciplined. I am reporting again to Erick Chasko, the same supervisor at the Homewood yard who harassed me at the beginning of my tenure at CN. He was moved back to the yard two weeks after I returned.

I asked for a copy of my employee file on November 13, 2018. When I received it, it was only 5 pages long – and there was nothing whatsoever in the file about my complaints, the investigation, or anything related to the harassment, discrimination, and retaliation I have experienced at CN. When I asked where those materials were, I was told in writing by Angela Lee that "these are company documents that are not available to you."

On December 13, 2018, I received a letter from Angela Lee stating that CN has completed its investigation into my complaint against Marcos Salamanca and my complaints about my treatment as a Leadman. The letter concluded, without providing any information about the underlying investigation, that "we were unable to conclude that any violation of our Prohibited Harassment, Discrimination and Anti-Retaliation Policy occurred."

CN's actions constitute discrimination and harassment on the basis of gender and race and retaliation for engaging in protected activities in violation of Title VII. CN has also created and permitted to continue a hostile work environment. I have suffered monetary losses, extreme

12/28/2018  03:56    170875(   )3              SOCHICAGO HEIGH(   )          PAGE  05/05

*EEOC Charge of Juanita Balderas*
*Page 5*

emotional distress, high blood pressure and other physical symptoms of stress, and a curtailed career trajectory as a result of CN's unlawful actions.

I seek all damages to which I am entitled in law and equity, include reinstatement to the same terms and conditions of employment as my male and non-Hispanic coworkers, back pay, front pay, compensatory damages (including medical expenses, future losses, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorney's fees and costs of litigation, and punitive damages.

I bring this charge on behalf of myself and all others similarly situated.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | AMENDED<br>440-2019-01899 |

Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name (*indicate Mr., Ms., Mrs.*) | Home Phone (*Incl. Area Code*) | Date of Birth |
|---|---|---|
| Ms. Juanita Balderas | 708-518-5067 | April 1, 1978 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 81 E. Glengate Avenue | Chicago Heights, IL 60411 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (*Include Area Code*) |
|---|---|---|
| Illinois Central Railroad Company, and Indirect Subsidiary of Canadian National Railway Company and/or its other subsidiaries | 500+ Employees | 708-322-3516<br>RECEIVED EEOC |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 17641 Ashland Avenue | Homewood, IL 60430 (Local office) | AUG 07 2019 |

| Name | No. Employees, Members | Phone No. (*Include Area Code*) |
|---|---|---|
| | | CHICAGO DISTRICT OFFICE |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☑ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest: Dec. 2017   Latest: Present |
| ☑ RETALIATION  ☐ AGE  ☑ DISABILITY  ☐ GENETIC INFORMATION | ☑ CONTINUING ACTION |
| ☐ OTHER (*Specify*) | |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

I am a female employee of Illinois Central Railway Company ("IC"), an indirect subsidiary of Canadian National Railway Company. I began working for IC in December 2017. I am currently a Hostler at IC's Homewood, IL location. During my employment, I have been discriminated against on account of my gender (female) and race (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended. I have also been retaliated against for engaging in protected activity. Recently I was retaliated against because of disability. I filed an EEOC charge (440-2019-01899) on December 28, 2018. I file this new charge to report additional discrimination and retaliation that have occurred since my initial charge. *Please see additional pages below.*

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| August 07, 2019      Juanita Balderas<br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

*Second EEOC Charge of Juanita Balderas*
*Page 2*

_____

After I filed my initial EEOC charge, I continued to be discriminated and retaliated against. Additional acts include increased hostility from my supervisors and coworkers and assignment to be supervised by an individual involved in my earlier harassment.

In December 2019, I injured my back while on the job. On January 21, 2019, my doctor released me for light duty. I sent my release to Heather Lifonti, the Risk Officer for IC, and asked IC to return me to work at a light duty position. IC refused to do so. IC has returned other individuals (who were non-disabled and/or who had not engaged in protected activity) to work at a light duty position after an injury, including Don Stojakovich, Jake Bruns, and Molly Tobias.

I seek all damages to which I am entitled in law and equity, include reinstatement to the same terms and conditions of employment as my similarly-situated coworkers, back pay, front pay, compensatory damages (including medical expenses, future losses, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorney's fees and costs of litigation, and punitive damages.

I bring this charge on behalf of myself and all others similarly situated.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

___

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Juanita Balderas**<br>**c/o Jamie Franklin, Esq.**<br>**THE FRANKLIN LAW FIRM LLC**<br>**53 W. Jackson Blvd**<br>**Suite 803**<br>**Chicago, IL 60604** | From: **Chicago District Office**<br>**230 S. Dearborn**<br>**Suite 1866**<br>**Chicago, IL 60604** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **Amended**<br>**440-2019-01899** | **Daniel Acosta,**<br>**Investigator** | **(312) 872-9667** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to** *your case:*

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]* 12/20/19

**Julianne Bowman,** *(Date Mailed)*
**District Director**

Enclosures(s)

cc: **Illinois Central Railroad Company**
*c/o Johner T Wilson III, Partner*
**Dinsmore & Shohl, LLP**
**227 West Monroe Street, Suite 3850**
**Chicago, IL 60606**