IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Juanita Balderas,** ) | |
| **Plaintiff,** ) | |
| ) | No. 20 C 1857 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **Illinois Central Railroad Company,** ) | |
| **Erick Chasko, and Marcos Salamanca,** ) | |
| **Defendants.** ) | |

## ORDER

For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part. Judgment is granted to the Defendants on the sex-discrimination claims under Title VII and the Illinois Human Rights Act and denied as to the claim for retaliation and the claim under the Illinois Gender Violence Act.[1] The trial date stands.

## STATEMENT

Plaintiff, who was employed as a Leadman (it is disputed whether she is the first woman to have had this position) with the Illinois Central Railroad Company ("IC"), brought the instant lawsuit against IC for sex harassment and retaliation under Title VII and the Illinois Human Rights Act ("IHRA"), and against Marcos Salamanca, a coworker, pursuant to the Illinois Gender Violence Act ("IGVA"). Defendants move for summary judgment.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted).

To succeed on a hostile work environment claim, a plaintiff must show: (1) unwelcome harassment; (2) based on a protected characteristic; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) a basis for employer liability. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021).[2] As summarized recently by the Seventh Circuit:

---

[1] Plaintiff voluntarily dismissed her claims of disability discrimination.
[2] The Seventh Circuit recently stated:

> A hostile work environment is based on the totality of the circumstances. Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." This inquiry is "fact intensive." For example, we account for "the specific circumstances of the working environment" as well as "the relationship between the harassing party and the harassed." Finding a hostile work environment, then, "is not, and by its nature cannot be, a mathematically precise test." But when proved, one thing is certain: "the work environment was so pervaded by discrimination that the terms and conditions of employment were altered."

*Demkovich,* 3 F.4th at 977 (internal citations omitted).

Plaintiff points to evidence that her subordinates did not recognize her authority, and she was subjected to a consistent stream of gender-related derogatory comments by her coworkers, who called her, among other things, "bitch," "bossy bitch," "stupid bitch," and "woman who didn't know her job." They also made comments that they didn't know why IC had women working at the company, and that they "don't listen to their wives, so 'why would they listen to her?'"

Defendant does not deny the fact that comments were made to Plaintiff, but only argues that, under the law, the comments were not gender-based. The Court disagrees. *See Passanti v. Cook Cnty.*, 689 F.3d 655, 665 (7th Cir. 2012) (noting that courts have "recognized that . . . repeated use of the word 'bitch' to demean a female employee could support a claim of sexual harassment if it was sufficiently pervasive or severe and if the context showed a hostility to the plaintiff because she was a woman"); *see also Hilgers v. Rothschild Inv. Corp.*, No. 15 C 3572, 2017 WL 4164036, at *6 (N.D. Ill. Sept. 20, 2017) ("[T]he Seventh Circuit has held that sexist, sexual, or gender-based comments, when made on a regular basis, are sufficient to create a hostile work environment.").

In addition to the comments, Plaintiff states that she also feared for her physical safety on at least one occasion. According to Plaintiff, Marcos Salamanca, a subordinate, harassed and assaulted her when he came into the office, angry about an assignment Plaintiff had given him, and said to her in an aggressive manner:

---

> At times, this court has recited this test differently, "looking instead for evidence that the workplace was both subjectively and objectively offensive—either in lieu of the first prong—that the employee was subject to unwelcome harassment—or the third prong—whether the harassment was severe or pervasive enough to rise to the level of a hostile work environment." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). But "[i]n the end, we have concluded that the inquiry is the same." *Id.*

*Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021)

2

> Fuck you. I don't know what the fuck you mean by that, and you jackass, I don't know what the fuck I'm doing? You stupid bitch. You don't know what the fuck you're doing . . . . Hell, you aren't nothing but a little fucking ass with a magnet up your ass -- . . . you are nothing but a lazy, fat ass with a magnet on your ass. I don't know why they have women working here.

Plaintiff asserts that three male coworkers were in the room when Salamanca made these comments, including one who restrained Salamanca and pushed him away from Plaintiff. Plaintiff states she was concerned for her safety, and as soon as Salamanca left, she ran out, got into her car, and drove away. Defendants dispute Plaintiff's version of events but admit that Salamanca testified in his deposition that he was "not going to stand there and listen to her while she's just yelling at me and starting – trying to poke at me, you know. My wife would be different, if my wife ever did it to me, it's different, you know." He also admitted he never commented to male supervisors that they were not his husband, and when asked why, Salamanca testified, "that's different. She's a woman." (Defs.'s Ex. 8, Dkt. # 69-9, Salamanca Dep. 192:22-193:20.) Plaintiff also states that pornographic images were placed inside the locomotives, in the public areas of the yard, and in many of the male employees' personal workstations, which were visible to anyone walking by. Defendants deny this. Plaintiff further asserts that she complained that the images made her uncomfortable and that at least one supervisor "just laughed" in response. Finally, Plaintiff refers to the testimony of Janet Washington, a senior supervisor at IC, that there are employees at IC who frown on seeing women in management positions.

Looking at the totality of the circumstances, including but not limited to the demeaning gender-based comments, the pervasive presence of pornography, and the threatening encounter with Salamanca, the Court finds that Plaintiff has created a genuine issue of material fact as to the first three elements of a sex-harassment claim.[3]

IC contends, however, that Plaintiff has not created a genuine issue of material fact as to the last element of her claim—that there is a basis for employer liability. Both parties' discussions of this issue are brief and superficial. It is not the Court's responsibility to add substance to the parties' bare-bones assertions, particularly with respect to the critical element of employer liability. The Court has done its best to address this element with the sparse discussion provided by the parties.

"Under both Title VII and the IHRA, an employer is liable for the harassment of a nonemployee or nonsupervisory employee if [the employer] was 'negligent either in discovering or remedying the harassment.'" *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2017). To the extent IC argues that Plaintiff did not complain about her harassment, this is

---

[3] Plaintiff also notes that she received a photo of a penis on her cell phone from an unknown number while she was serving as a Leadman, and she believes it was from one of her coworkers. Although Plaintiff was not able to determine who sent her the photo, the accompanying message said, "Hey Juanita," and Plaintiff concluded it must have been someone from work, since her coworkers were the only people who referred to her as "Juanita." The Court, however, does not consider the selfie as evidence of harassment given the lack of any evidentiary basis regarding the sender.

simply inaccurate. Plaintiff asserts she lodged a formal complaint with Duane Spears and Angela Lee, employees in the Human Resources ("HR") department at IC, about the ongoing gender-based harassment and the incident with Salamanca. IC admits that Plaintiff contacted Lee about these issues. (Defs.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 84, ¶ 16.) IC, however, contends that its HR department conducted a thorough investigation of the matter by interviewing 18 management and craft-union employees, and issued a formal notice of completion of the investigation. (*Id.* ¶ 17.) In that notice of completion, which was written on company letterhead and addressed to Plaintiff, IC states:

> We have completed our investigation into your recent complaint that you brought on behalf of yourself against Marcos Salamanca, Electrician. In your complaint[,] you alleged you were involved in an altercation with Mr. Salamanca and he called you inappropriate names. In addition[,] you alleged as a lead man you were tormented and bullied by the employees and supervisors did not train you. Our investigation was conducted promptly, objectively, thoroughly and confidentially.
>
> Based on our investigation of your complaint, we were unable to conclude that any violation of our Prohibited Harassment, Discrimination, and Anti-Retaliation Policy occurred.

(Defs.'s Ex. 17, Dkt. # 65-18.)

Plaintiff's entire response to IC's assertion that it responded to Plaintiff's complaint with a full investigation is as follows:

> . . . IC contends that after an "investigation," it found no evidence that [Plaintiff] had been harassed. This is despite all the reasons why IC should have been aware of what was going on. And Janet Washington, a longtime female manager at IC, testified that IC did not conduct a real investigation into [Plaintiff's] claims. As such, there is a genuine issue of material fact as to whether IC was negligent in failing to take remedial steps to address the harassment.

(Pl.'s Resp., Dkt. # 77, at 12.)

The only piece of evidence Plaintiff points to to undermine the validity of the investigation is Washington's contention that it was not "real." Plaintiff, however, fails to refer to any piece of record evidence that Washington had firsthand knowledge of whether a legitimate investigation was conducted. As already stated, it is not the Court's role to scour the record to find evidence in support of either party's position. A brief look at Washington's deposition, however, indicates that Washington was not in the HR department. (Defs.'s Ex. 4, Dkt. # 65-5, Washington Dep., at 117.) Indeed, when asked at her deposition, "Would you expect a formal investigation for any type of harassment or discrimination?", Washington responded, "Yes, I would. I personally would, yes. But I don't know how the company feels about that." (*Id.* at 142.) Thus, Washington admitted that she did not know whether it was company policy to conduct what she called a "real" or "formal" investigation when an employee complained of sex harassment. As such, Plaintiff's only piece of evidence rebutting IC's contention that it

4

conducted a full investigation of Plaintiff's complaints is testimony from an individual who has no direct knowledge of IC's policy regarding the type of investigation that must be conducted regarding a complaint of sex harassment. Because Washington's testimony fails to create a genuine issue of material fact as to whether a valid investigation was conducted, IC's reliance on its investigation remains unrebutted; therefore, the Court grants IC summary judgment on the Title VII and IHRA sex-harassment claims.

To establish a claim for Title VII retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Such protected activity consists of opposing or complaining about discrimination or harassment by the employer based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). As already noted above, Plaintiff engaged in statutorily protected activity when she complained to the HR department about the purported harassment and Salamanca's confrontation with her. IC asserts that Plaintiff did not suffer an adverse employment action when, after being placed on leave following her confrontation with Salamanca and during the investigation, she was demoted from Leadman to Laborer, as Plaintiff contends.[4] Plaintiff responds that the adverse employment action was her demotion and IC's "ultimate refusal to offer her the position of Relief Foreman after promising it to her during the investigation (then awarding it to a male)." (Pl.'s Resp., Dkt. # 77, at 13.) According to Plaintiff, the following questions of fact require a trial: "whether she accepted the Relief Foreman position; whether IC determined that it was no longer available to her, and why; whether IC demoted her to Laborer, and whether IC filled the position with a male of similar capabilities." (*Id*.)

Defendant asserts that Plaintiff was offered, but refused, the position of Relief Foreman, pointing to testimony of Manuel Salazar, a supervisor, and Mike Kirka, Plaintiff's union representative. (Defs.'s Ex. 3, Dkt. # 65-4, Salazar Dep., at 90:24-91:4 ("Duane [Spears, HR Senior Manager,] did ask her [at a meeting that Spears and Salazar attended with Plaintiff] multiple times if she wanted a relief foreman role at Woodcrest [a different yard], at which point she said, "No," multiple times. She said that she just wanted to bid her job as a laborer, do her job, and go home. She did not want to be a relief foreman."); Defs.'s Ex. 16, Dkt. # 65-17, Kirka Dep. at 61:8-61:23 ("I -- I don't think she wanted to go back [to Kirk Yard] as a relief foreman, and unfortunately for the – for the seniority that she had, she couldn't hold another job at Kirk Yard because there w[ere] more senior[] people over there, and she – she could not bump them.").) According to Plaintiff, however, the night before she was scheduled to begin the Relief Foreman position at Kirk Yard, she received a text message from Kirka telling her that the Relief Foreman position was no longer available and that she would have to find another position on which to bid. (Defs.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 84, ¶¶ 27.) Plaintiff contends that the only open position was as a Laborer at Woodcrest Yard on the midnight shift. (*Id*.) As already noted, IC disputes this assertion. The parties do not discuss whether Plaintiff's being forced to take a lower-paying position due to union rules is considered an adverse employment action under relevant precedent, so the Court does not address it. Because a genuine issue of

---

[4] For purposes of this motion, IC does not dispute that Laborer is a demotion from Relief Foreman but asserts that Plaintiff declined the offer of Relief Foreman and voluntarily took the Laborer position. (Defs.'s Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 84, ¶¶ 27-28.)

material fact exists as to whether IC offered her the Relief Foreman position and Plaintiff rejected it, IC's motion for summary judgment as to this claim fails.

The IGVA allows "[a]ny person who has been subjected to gender-related violence . . . [to] bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence." 740 ILCS 82/10. Salamanca contends that Plaintiff "fails to address [whether] the substance of any alleged threats by [him] were motivated by her gender." (Defs.'s Reply, Dkt. # 83, at 14.) One of the statutory definitions of gender-related violence includes a "threat of an act described in item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act." 740 ILCS 82/5. Items (1) and (2) state as follows:

> (1) One or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction.
>
> (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction.

*Id*.

Pointing to item (2), Salamanca asserts that Plaintiff has not pointed to any evidence that the threat was of a sexual nature. Plaintiff, however, has pointed to evidence that Salamanca's purported assault was based on her sex under item (1). Therefore, Salamanca's motion for summary judgment on the IGVA count is denied.

**Date**: September 21, 2021

_____
**Ronald A. Guzmán**
**United States District Judge**